# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| BETHANY GAUDREAU, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MY PILLOW, INC., <br><br> Defendants. | Case No. 6:21-cv-01899-CEM-GJK |

## DEFENDANT MY PILLOW, INC.'S MOTION TO STRIKE AMENDED COMPLAINT

Defendant My Pillow, Inc. ("Defendant" or "MyPillow"), by and through its undersigned counsel and pursuant to Rule 12(f)(2) of the Federal Rules of Civil Procedure and to Local Rule 3.01, hereby moves this Court to strike the First Amended Class Action Complaint of Plaintiff Bethany Gaudreau (DE 9) ("Amended Complaint").

MyPillow submits the enclosed Memorandum of Law in support of its Motion.

1

### DEFENDANT MY PILLOW, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AMENDED COMPLAINT

Rule 15 permits a party to amend a complaint within 21 days of the responsive pleading. It does not permit a wholly new complaint – one that adds unrelated claims and parties. With their Amended Complaint, Plaintiff Gaudreau and new plaintiff Ram attempt to use Rule 15 as a Trojan Horse to smuggle in a new lawsuit that rests on separate claims. Under well-settled Eleventh Circuit law, that attempt is unavailing, and the Court should strike the Amended Complaint.

### BACKGROUND

Plaintiff Bethany Gaudreau, individually and on behalf of all others similarly situated ("Gaudreau") filed a Class Action Complaint in the Ninth Judicial Circuit Court in and for Orange County, Florida, on September 28, 2021 (DE 1-1) ("Original Complaint"). In the Original Complaint, Gaudreau alleges that she has received marketing text messages from MyPillow after expressly asking to receive such messages no longer. (*Id*. at pp. 2-20). Gaudreau claims the messages violate the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA"). (*Id*. at pp. 1-2). The Original Complaint was presented as a "putative class action," and it proposed the following class to be represented by Gaudreau:

> All persons within the United States who, within the four years prior to the filing of this Complaint, (1) received a text message, (2) encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services, (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive any more telephonic communications from Defendant by replying "stop" or any other similar request.

(*Id*. at. P. 20).

MyPillow removed Gaudreau's action to this Court (Notice of Removal, DE 1) and filed its Answer to the Original Complaint (DE 8). Through its Answer to the Original Complaint, MyPillow denies it violated the TCPA and denies that Gaudreau is entitled to any relief from MyPillow.[1]

The day after MyPillow filed its Answer, the plaintiffs filed the Amended Complaint (DE 9). The Amended Complaint named a new plaintiff, Joseph Ram ("Ram"). Unlike Gaudreau, Ram does not allege that he asked MyPillow to stop sending him text messages. On the contrary, Ram claims he never sent any correspondence to MyPillow at all. Ram alleges that MyPillow violated the TCPA because he received marketing text messages from MyPillow on a cellular telephone number listed on the National Do-Not-Call Registry. (*Id*. at pp. 22-30, 38-39).

The Amended Complaint makes the following allegations specific to Gaudreau:

 15.    […] Plaintiff Gaudreau requested multiple times that Defendant stop contacting her cellular telephone.

 16.    Notwithstanding, Plaintiff Gaudreau continued to receive unsolicited text messages from Defendant.

 17.    The failure to stop calling is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

---

[1] MyPillow maintains and reiterates all denials set forth in its Answer to the Original Complaint. For the purposes of the instant Motion only, MyPillow acknowledges that the Court must accept the Amended Complaint's allegations as true. *See, e.g., Zeron v. C & C Drywall Corp*., No. 09-60861-CIV, 2009 WL 2461771, at *2 (S.D. Fla. Aug. 10, 2009). MyPillow reserves all rights to dispute the fact allegations made in both the Original Complaint and in the Amended Complaint.

> 18. The failure to stop calling is indicative of Defendant's failure to abide by any supposed internal do-not-call list Defendant claims to maintain.

(*Id*. at pp. 20-21).

For Ram, the Amended Complaint's specific allegations are as follows:

> 28. Plaintiff Ram's cellular telephone number that received Defendant's text message solicitations has been listed on the National Do-Not-Call Registry since September 5, 2013.
>
> 29. Plaintiff Ram never provided his telephone number to Defendant for any reason.

(*Id*. at p. 30).

In addition to these plaintiff-specific allegations, the Amended Complaints alleges the following facts to be "applicable to all plaintiffs":

> 37. To transmit the above telephonic sales text message calls to Plaintiffs, Defendant utilized a computer software system that automatically selected and dialed Plaintiffs' and the Class members' telephone numbers.
>
> 38. The impersonal and generic nature of Defendant's text messages, coupled with their frequency, demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiffs' and the Class members' telephone numbers.
>
> 39. The impersonal and generic nature of Defendant's text messages, coupled with their frequency, demonstrates that Defendant sent at similar text message solicitations in violation of the FTSA and TCPA to at least 50 other individuals.
>
> 40. To send the text messages to Plaintiffs and the Class members, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit thousands of text messages automatically and without any human involvement.

41. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

(*Id.* at p. 31).

The Amended Complaint then proposes the following classes in support of the putative class action:

> **INTERNAL DNC CLASS: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) received a text message, (2) encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services, (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive any more telephonic communications from Defendant by replying "stop" or any other similar request.**
>
> **DNC CLASS: All persons in the United States who from four years prior to the filing of this action (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services.**
>
> **FTSA CLASS: All persons in Florida who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiffs.[2]**

(*Id.* at pp. 32-33) (emphasis in original).

---

[2] The proposed "FTSA Class" is not the subject of the instant Motion. MyPillow reserves all rights to respond to claims properly before the Court of or relating to the proposed "FTSA Class" if necessary and appropriate.

## LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act […] on motion made by a party […] before responding to the pleading." Fed. R. Civ. P. 12(f)(2). Striking a pleading in its entirety is appropriate when doing so would remove "unnecessary clutter" from the docket. *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-Civ, 2017 U.S. Dist. LEXIS 222899, at *6 (S.D. Fla. Oct. 18, 2017) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). Courts throughout this circuit have noted that amended pleadings not authorized by Rule 15 of the Federal Rules of Civil Procedure are to be struck. *See, e.g., Regions Bank v. Commonwealth Land Title Ins. Co.*, 2012 U.S. Dist. LEXIS 158982, 2012 WL 5410948, at *2 (S.D. Fla. Nov. 6, 2012); *Rogers v. Hartford Life & Accident Ins*. Co., 2012 U.S. Dist. LEXIS 87433, 2012 WL 2395194, at *1 n.1 (S.D. Ala. June 22, 2012). When presented with a motion to strike under Rule 12(f), district courts have "broad discretion" in disposing of the motion. *Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681, 683 (M.D. Fla. 2002).

## ARGUMENT

1. **The Amended Complaint Should be Struck Because It Does Not Meet Rule 20's Joinder Requirements**

Though the Amended Complaint was filed a day after MyPillow filed a responsive pleading, the plaintiffs are not entitled to amend the Original Complaint solely due to the

21-day amendment period of Rule 15(a)(1)(B). This is because the Amended Complaint improperly attempts to join new, unrelated plaintiffs to the case.

### a. Rule 20 Applies to the Amended Complaint

Courts in this circuit have made it clear that "[i]n addition to satisfying Rule 15, a plaintiff wishing to amend an existing complaint to join a co-plaintiff or to add a new party as a defendant must also meet Rule 20's requirements for party joinder." *Dahdouh v. Rd. Runner Moving & Storage Inc.*, No. 20-CV-61936-RAR, 2021 WL 1623027, at *2 (S.D. Fla. Feb. 25, 2021) (citing *Smith v. Trans-Siberian Orchestra,* 728 F. Supp. 2d 1315, 1318-19 (M.D. Fla. 2010)) (emphasis added).

### b. Ram and the "DNC Class" are Not Properly Joined Under Rule 20

Rule 20 provides that persons may be joined as a plaintiff only if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1); (emphasis added). Both prongs of Rule 20 must be satisfied, not just one. *See, e.g., Vanover v. NCO Fin. Servs., Inc.,* 857 F.3d 833, 839 (11th Cir. 2017). The Amended Complaint does not satisfy the first prong, and it should be dismissed.

A Rule 20 joinder analysis "refers to the same transaction or occurrence not to similar transactions or occurrences." *Hartley v. Clark*, No. 09-CV-559, 2010 WL 1187880, at *3 (N.D. Fla. Feb. 12, 2010) (emphasis added), report and recommendation adopted at 2010 WL 1187879 (N.D. Fla. Mar. 23, 2010). In the Eleventh Circuit, courts apply a "logical relationship test" to determine whether claims arise out of the same transaction or

occurrence for purposes of Rule 20. *Smith,* 728 F. Supp. 2d at 1319 (citing *Republic Health Corp. v. Lifemark Hosp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). Under this test, "a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Smith,* 728 F. Supp. 2d at 1319. "In other words, 'there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Vanover v. NCO Fin. Sys., Inc.*, No. 8:15-CV-1434-T-33EAJ, 2015 WL 13792471, at *2 (M.D. Fla. Oct. 28, 2015), aff'd sub nom. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833 (11th Cir. 2017) (citing *Republic Health,* 755 F.2d at 1455 (11th Cir. 1985); *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979)).

Ram's claims do not have a "logical relationship" to Gaudreau's claims, which rest on a different set of facts. Gaudreau alleges she is entitled to relief under the TCPA because she made direct requests to MyPillow that went unheeded. (Am. Compl., pp. 20-21). Conversely, Ram claims that he made no request to MyPillow at all. (*Id*. at p. 30). Rather, Ram claims MyPillow violated the TCPA because MyPillow knew or should have known he was on the National Do-Not-Call Registry. (*Id*. at pp. 30-31). The alleged violations giving rise to the claims of Gaudreau and those of Ram would have resulted from two entirely different omissions. Whether MyPillow failed to abide by an *internal* do-not-call list, as Gaudreau alleges, is a separate question from whether MyPillow failed to abide by an *external* do-not-call list, as Ram claims.

The Amended Complaint does not reconcile this difference. In identifying the alleged facts "applicable to all plaintiffs," the Amended Complaint alleges only that all

8

plaintiffs received texts from MyPillow's "messaging platform." (Am. Compl., p. 31). At best, these alleged facts suggest "similar" transactions and/or occurrences, namely receiving automated text messages from MyPillow. "Similar" will not suffice under Rule 20, which requires the "<u>same</u> transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A) (emphasis added). *See also Hartley,* 2010 WL 1187880, at *3 ("Rule 20 refers to the same transaction or occurrence not to similar transactions or occurrences."). If anything, the Amended Complaint highlights the differences among its claims by proposing two discrete classes of plaintiffs. (Am. Compl., pp. 32-33).

The "Internal DNC Class" would apply only to putative plaintiffs such as Gaudreau; it is no coincidence that the proposed "Internal DNC Class" is described in the Amended Complaint with the exact same language as the lone proposed class in the Original Complaint. (Am. Compl., p. 32; Orig. Compl., p. 20). The "DNC Class" proposed in the Amended Complaint would only apply to those plaintiffs, like Ram and unlike Gaudreau, who claim to have been on the National Do-Not-Call Registry. (Am. Compl., pp. 32-33). As with their proffered representatives, the claims of the "Internal DNC Class" have no "logical relationship" to the claims of the "DNC Class" because such claims do not rely on the same facts. Therefore, the "DNC Class" plaintiffs are not properly joined to the case under Rule 20, and even under Rule 15's 21-day provision, the Amended Complaint is not proper. *See, e.g., Smith,* 728 F. Supp. 2d at 1318-19.

Caselaw in this circuit confirms that Ram and the "DNC Class" plaintiffs have been misjoined. In the recent *Abilify* litigation in the Northern District of Florida, the court found

9

joinder of multiple plaintiffs' claims against a common defendant was improper, where, as is the case here, those claims arose from different transactions and occurrences. *In re Abilify (Aripiprazole) Prod. Liab. Litig.,* No. 3:16MD2734, 2019 WL 13085425, at *2 (N.D. Fla. Dec. 17, 2019). In the context of a multi-party copyright action, the Middle District of Florida has found that claims of infringing conduct through the same online network were not "logically related" because they did not arise from the same transaction or occurrence. *Interscope Recs. v. Does 1-25*, No. 6:04-CV-197-ORL-22, 2004 WL 6065737, at *4 (M.D. Fla. Apr. 1, 2004), report and recommendation adopted, No. 6:04-CV-197-ORL, 2004 WL 7078585 (M.D. Fla. Apr. 27, 2004). Even instances of proper joinder would support striking the Amended Complaint in this case, as shown by *Kozak v. Medicredit, Inc*., 318 F.R.D. 684 (M.D. Fla. 2016). In *Kozak,* the district court found the added plaintiffs' TCPA claims passed the "logical relationship test." *Id.* at 686. In so holding, however, the court expressly noted that each plaintiff alleged the defendant continued to "place debt collection calls for medical debts after being asked to stop." *Id.* The *Kozak* plaintiffs shared a key characteristic that Gaudreau and Ram do not. That joinder was allowed in that case highlights precisely why it should be rejected here.

## CONCLUSION

The Amended Complaint falls short of the joinder requirements established by the Federal Rules of Civil Procedure and by the law of the Eleventh Circuit. This Court therefore should exercise its discretion to strike the Amended Complaint from the docket in this case.

## LOCAL RULE 3.01(g) CERTIFICATION

The parties have conferred via email and via telephone regarding this Motion. The parties do not agree on the resolution of this Motion, and the Motion will be opposed.

DATED:  January 7, 2022

**PARKER DANIELS KIBORT LLC**

By */s/ Ryan P. Malone*
Andrew D. Parker (*pro hac vice*)
Ryan P. Malone (*pro hac vice*)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
malone@parkerdk.com


**HARTNETT LAW P.A.**

David P. Hartnett

Florida Bar No. 946631
8900 S.W. 107 Avenue
Suite 301
Miami, Florida 33176
Telephone: 305-598-2000
Facsimile: 305-675-6171
dhartnett@thehartnettfirm.com

*Counsel for Defendant My Pillow, Inc.*

11