## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO. 6:21-cv-01899-CEM-GJK

BETHANY GAUDREAU,
individually and on behalf of all
others similarly situated,                           **CLASS ACTION**

      Plaintiff,                                **JURY TRIAL DEMANDED**

v.

MY PILLOW, INC.,

      Defendant.
_____/

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATIONAND DISMISS CLASS ACTION CLAIMS

      Plaintiffs Bethany Gaudreau and Joseph Ram respond in opposition to the

Motion to Compel Arbitration and Dismiss Class Action Claims (the "Motion"), [DE

49], filed by Defendants My Pillow, Inc. ("My Pillow"), Michael James Lindell

("Lindell"), and Frank Speech, LLC ("Frank Speech") (collectively, "Defendants"),

and state:

### I.      INTRODUCTION

      Defendants submit no evidence to support their contention that Plaintiffs

entered into a binding agreement containing an arbitration provision. The undersigned

brought this issue to Defendants' counsel's attention prior to the filing of this response

and requested for Defendants to produce any evidence that might support their

Motion. Defendants and their counsel ignored the request. With no proof that

Plaintiffs entered into any agreement, Defendants resort to mischaracterizing Plaintiffs' Corrected Second Amended Class Action Complaint, claiming that it establishes Plaintiffs' knowledge of the "Terms" found on My Pillow's website. Mot. at 13. What Defendants cite, however, is not an allegation that Plaintiffs ever visited the site, but a Bluebook citation to the date when Plaintiffs' counsel last visited My Pillow's website during preparation of the pleading. Under Florida law, it is Defendants' burden to demonstrate by a preponderance of the evidence that a valid and enforceable agreement exists. Defendants fail to satisfy their burden and the Motion should be denied for this reason alone.

But even if this Court were inclined to overlook this fatal flaw, it should still deny the Motion as it is based on an unenforceable browsewrap agreement. Defendants' basis for compelling arbitration is a hyperlink to Defendant's "Terms" containing the purported arbitration agreement. Defendants' Motion contains lengthy briefing to distract from the fact that the hyperlink is an unenforceable browsewrap agreement found at the bottom of My Pillow's website. Moreover, in violation of Florida law, the banner makes no mention that My Pillow will attempt to bind visitors to arbitration simply by visiting the website. And since Defendants cannot show that Plaintiffs had actual notice of the arbitration provision, and having failed to demonstrate that Plaintiffs were on inquiry notice, no agreement to arbitrate was ever formed.

Moreover, the arbitration provision Defendants seek to enforce only entitles My Pillow to seek arbitration: "**you and MyPillow** agree that any dispute arising out of or

in any way related to these messaging terms and conditions ('Messaging Terms') or your receipt of text messages from MyPillow or its service providers will be resolved by binding arbitration." *See* [DE 50] at 3 (emphasis supplied). Accordingly, even if this Court is persuaded to grant arbitration, it should do so only for Plaintiffs' claims against My Pillow, and the case should proceed against Lindell and Fran Speech.

Lastly, the Court should reject Defendants' class action waiver argument for the same reasons that it should deny arbitration: (1) Defendants have not met their burden to show by a preponderance of the evidence that Plaintiffs agreed to a class waiver; (2) Defendants' "Terms" hyperlink did not place Plaintiffs on notice of any such provision; and (3) Lindell and Fran Speech are not entitled to enforce any purported waiver.

## II.    LEGAL STANDARD

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *see also P&S Bus. Machs., Inc.*

*v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

*Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *4-5 (S.D. Fla. Aug. 12, 2021).

"[T]he presumption of arbitrability 'does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *6 (S.D. Fla. May 13, 2020) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014))). The Supreme Court recently reiterated this rule and rejected Defendants' claim that arbitration is broadly favored over litigation:

> Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation….***The federal policy is about treating arbitration contracts like all others, not about fostering arbitration***.

*Morgan v. Sundance, Inc.*, No. 21-328, 2022 U.S. LEXIS 2514 (May 23, 2022) (emphasis supplied).

## III.    ARGUMENT

### A. <u>Defendants Have not Met Their Burden to Prove the Existence of an Agreement</u>.

The Eleventh Circuit "repeatedly has emphasized that '*state law* generally governs whether an enforceable contract or agreement to arbitrate exists.'" *Bazemore v. Jefferson Cap. Sys.*, LLC, 827 F.3d 1325, 1329 (11th Cir. 2016) (emphasis original). Under Florida law, "[t]he party seeking enforcement of an agreement has the burden

4

of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019); *see also Bazemore*, 827 F.3d at 1330 ("The party asserting the existence of a contract has the burden of proving its existence and its terms."); *McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 U.S. Dist. LEXIS 27200, 2017 WL 3726040, at *3 (S.D. Fla. Feb. 24, 2017) (applying Florida law and recognizing that "[t]he party asserting a contract must prove its existence by a preponderance of the evidence."); *Hudson v. P.I.P., Inc.*, No. 18-61877-CIV, 2020 U.S. Dist. LEXIS 45158, 2020 WL 5647009, at *6 (S.D. Fla. Mar. 13, 2020) ("Under Florida law, the party seeking to enforce arbitration has the burden of proving 'offer, acceptance, consideration and sufficient specification of essential terms . . . by a preponderance of the evidence.'") (quoting *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 U.S. Dist. LEXIS 33528, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009), *report and recommendation adopted*, No. 18-61877-CIV, 2020 U.S. Dist. LEXIS 176122, 2020 WL 5647051 (S.D. Fla. Apr. 2, 2020)).

Here, Defendants offer no evidence to prove the existence of an agreement between Plaintiffs and Defendants. Prior to the filing of this opposition, the undersigned requested from Defendants' counsel evidence supporting the claim that a contract exists, and expressed concern with whether Defendants' Motion had been filed in good faith. To date, Defendants' counsel has provided nothing to support the claim that Plaintiffs visited My Pillow's website or entered into an agreement with any Defendant.

To support their Motion, Defendants submit the Declaration of Nicolas

5

Dressen, My Pillow's Vice President of Digital Marketing. *See* Dressen Decl., [DE 50]. That declaration never states that an agreement was ever formed, nor does it attach any evidence to support the existence of an enforceable agreement. In their Motion, Defendants attempt to remedy this fatal flaw by claiming that the Second Amended Complaint suggests that Plaintiffs visited My Pillow's website. Mot. at 13. But the allegation cited is merely a citation to the website and the date on which the undersigned last visited the website. Nowhere does the operative pleading state that either Plaintiff ever visited the site. Instead, the Corrected Second Amended Complaint alleges that Plaintiffs have never had any type of relationship or business dealings with Defendants. *See* [DE 40] at ¶¶21, 32-35.

Defendants rely on *Brueggemann v. NCOA Select, Inc.*, to attempt to shift the burden to Plaintiffs, Mot. at 11-12, but that case undermines Defendants' position since the plaintiff alleged – and it was therefore undisputed – that he had visited the defendant's website. *See* No. 08-80606-CIV-MARRA, 2009 U.S. Dist. LEXIS 55296 (S.D. Fla. June 29, 2009) ("The allegations of the First Amended Complaint are as follows: On or about January 17, 2007, Plaintiff made an online purchase of a cellular telephone from Overstock.").

In all, Defendants offer nothing to satisfy their burden of demonstrating the existence of a contract by a preponderance of the evidence. For this reason alone, this Court should summarily deny the Motion. But even if this Defendants could muster some evidence to meet their burden, the Motion should still be denied given that Defendants seek to compel arbitration based on an unenforceable browsewrap

6

agreement.

      B. <u>Even if They Could Meet Their Burden, Defendants Cannot Compel Arbitration Pursuant to a Browsewrap Agreement</u>.

Where, as is the case here, a defendant fails to show that the plaintiff had actual notice of the arbitration provision, it must show that the design and placement of its website were such that a reasonable consumer would have been placed on inquiry notice of the arbitration provision. *See Herman v. SeaWorld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 U.S. Dist. LEXIS 181173, at *14 (M.D. Fla. Aug. 26, 2016) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)).

Defendants seek to compel arbitration based on purported notice provided to Plaintiffs through My Pillow's "Terms" hyperlink located at the bottom of My Pillow's website. For all its arguments and citation to case law, Defendants cannot escape the fact that in the continuum of internet agreements, the "Terms" hyperlink is an unenforceable browsewrap contract and no arbitration agreement between Plaintiffs and Defendant was ever formed (assuming Plaintiffs visited the website, which Defendants cannot prove).

In *Berman v. Freedom Fin. Network, LLC*, the Ninth Circuit recently rejected a similar strategy to bind consumers to an arbitration provision by burying the terms in a hyperlink. *See* No. 20-16900, 2022 U.S. App. LEXIS 9083 (9th Cir. Apr. 5, 2022). At issue in that case was a disclosure much more conspicuous than the one at issue here:

In determining that the website did not alert consumers to the existence of an

arbitration provision, the Ninth Circuit explained:

> Website users are entitled to assume that important
> provisions—such as those that disclose the existence of
> proposed contractual terms—will be prominently
> displayed, not buried in fine print. Because "online
> providers have complete control over the design of their
> websites," *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444,
> 289 Cal. Rptr. 3d 1, 16 (Ct. App. 2021), "the onus must be
> on website owners to put users on notice of the terms to
> which they wish to bind consumers," *Nguyen*, 763 F.3d at
> 1179. The designer of the webpages at issue here did not
> take that obligation to heart.

8

> Second, while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists. *See Sellers*, 289 Cal. Rptr. 3d at 29. Because our inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not to the expert user, the design of the hyperlinks must put such a user on notice of their existence. *Nguyen*, 763 F.3d at 1177, 1179.
>
> A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from the surrounding text. *Sellers*, 289 Cal. Rptr. 3d at 29.

*Id.* at *15-16. Further, the Ninth Circuit reasoned that the consumers "did not take any action that unambiguously manifested their assent to be bound by the terms and conditions." *Id.* at * 17. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* The Ninth Circuit rejected the argument that the websites' language stating "'I understand and agree to the Terms & Conditions'" was sufficient to manifest assent because "[the websites] did not indicate to the user what action would constitute assent to those terms and conditions. Likewise, the text of the button itself gave no indication that it would bind plaintiffs to a set of terms and conditions." *Id.* at * 18.

Courts in this District have similarly held that "[w]hether a reasonably prudent user is put on inquiry notice turns on the clarity and conspicuousness of [the] terms." *Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021

U.S. Dist. LEXIS 152553, at *13 (S.D. Fla. Aug. 12, 2021) (quoting *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020) (citations and quotations omitted). "In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (citations and quotations omitted).

As in *Berman*, the placement, coloring, and font sizes of My Pillow's website are not sufficiently conspicuous to place reasonable consumers like Plaintiffs on notice. *See Fridman*, 2021 U.S. Dist. LEXIS 152553, at *20-21 (finding website disclosures did not lead to the formation of a contract, and stating "the record does not support the conclusion that Plaintiff was on constructive notice of the Website's Terms, which include the arbitration and class action waiver provisions. As such, the Court finds that there is no valid agreement in this case, which would require that Plaintiff's claims must proceed through arbitration on an individual basis."). And while Defendants attempt misconstrue the design of the website by highlighting just the portion containing the hyperlink, a screenshot of the complete website (depicted below) shows that the "Terms" hyperlink is at the bottom of the page where a consumer would not encounter it without scrolling to the bottom of the page:



Moreover, where a website like My Pillow's "makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Herman v. SeaWorld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 U.S. Dist. LEXIS 181173 (M.D. Fla. Aug. 26, 2016) (quoting *Nguyen*, 763 F.3d at 1178-79); *see also Maree v. Deutsche Lufthansa AG*, No. SACV 20-885-MWF (MRWx), 2021 U.S. Dist. LEXIS 16452, at *8-9 (C.D. Cal. Jan. 26, 2021) (holding that Expedia.com's Terms of Use were not "sufficiently noticeable to put a reasonable user on inquiry notice of its provisions" - even though above the "Complete Booking" button, there was the statement: "By selecting to complete this booking I acknowledge that I have read and accept the Rules & Restrictions, Terms of Use . . . and Privacy Policy . . . and Government Travel Advice").

In *Goldstein v. Fandango Media*, *LLC*, the court denied a motion to compel arbitration based on the following disclosure:



No. 9:21-cv-80466-RAR, 2021 U.S. Dist. LEXIS 139153, at *3 (S.D. Fla. July 27, 2021).

In a thorough and well-reasoned opinion discussing Florida law on the formation of online contracts, the court in *Goldstein*, held that "Fandango's notice is deficient because of its placement on the webpage and because the notice fails to alert the user of the arbitration agreement." *Id.* at *9. The court reasoned that "the inconspicuous appearance and poor placement of Fandango's notice negates its purportedly intended purpose. It is significant that Fandango's notice regarding the binding nature of its Terms and Policies was placed *beneath* the large, orange, all-capitalized, COMPLETE MY PURCHASE click button, rather than above it." *Id.* (citing *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002) (C.J. Sotomayor) (finding that a reasonably prudent person may not be aware of a notice of license terms below a download button); *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[C]lose proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.")). My Pillow's website provides equally deficient notice to a website visitor. Like in *Goldstein*, it is significant that the notice to the "Terms" hyperlink was at the bottom of the site, which was intentional so it would not be seen by visitors to the website.

In all, Defendants' Motion is based on an unenforceable browsewrap agreement. This Court should therefore deny the Motion because reasonable prudent consumers like Plaintiffs would not have been placed on notice of My Pillow's arbitration provision. But even if Defendant's arguments were given any consideration, Defendant's Motion should nevertheless be denied because My

Pillow's disclosures, in violation of Florida law, fail to specifically incorporate and describe the arbitration provision.

**C. <u>Additionally, the "Terms" Hyperlink Fails to Describe and Incorporate the Collateral Arbitration Agreement, Rendering it Unenforceable.</u>**

In *Goldstein*, part of the court's reasoning for denying the motion to compel arbitration was based on the browsewrap agreement's failure to comply with Florida law with respect to the incorporation of collateral documents. *See* 2021 U.S. Dist. LEXIS 139153, at *10. Specifically, the court held in pertinent part:

> the language used in Fandango's browsewrap agreement is insufficient to place a reasonable user on notice that completing a purchase represents a waiver of the user's right to file a lawsuit compelling Fandango's appearance in court. In Florida, to incorporate a collateral document into an agreement, the agreement must: (1) specifically provide that the collateral document is being incorporated; and (2) sufficiently describe the collateral document being incorporated….Here, Fandango's Arbitration Agreement is a collateral document, but Fandango's notice does not sufficiently describe it so that the user is on notice of the mandatory arbitration provision, nor does Fandango specifically advise the user that an agreement to arbitrate is being incorporated into its Terms and Policies.

*Id.* (citing *Vitacost.com*, 210 So. 3d at 762) ("Florida law requires the agreement to specifically provide that the collateral document is being incorporated and to sufficiently describe the collateral document to be incorporated….The seller's webpages failed to advise the plaintiff that his purchase was subject to the terms and conditions of the sale and did not put him on inquiry notice of the arbitration provision.") (citing *Herman v. Seaworld Parks & Entertainment, Inc.*, 2016 U.S. Dist.

LEXIS 181173, 2016 WL 7447555 (Fla. M.D. Aug. 26, 2016); *BGT Grp., Inc. v. Tradewinds Engine Servs.*, LLC, 62 So.3d 1192, 1194 (Fla. 4th Dist. Ct. App. 2011)).

Like the disclosure in *Goldstein*, My Pillow's website, in violation of Florida law, fails to describe or incorporate the arbitration agreement, which is a collateral document. The website makes reference (at the bottom of the website) to My Pillow's "Terms" but says nothing about the arbitration clause Defendants seek to enforce. Under Florida law, the failure to specifically describe and incorporate the collateral arbitration agreement means that Plaintiffs were never placed on notice of the agreement – notwithstanding any arguments by Defendants regarding the conspicuousness of the disclosures – and, therefore, the arbitration agreement is unenforceable.

### D. <u>Nothing in the Purported Arbitration Provision Entitles Lindell or Frank Speech to Invoke Arbitration</u>.

In addition to being factually baseless, Lindell's and Frank Speech's attempt to invoke the purported arbitration provision legally untenable, as courts across the country have recognized in denying motions to compel arbitration in cases with facts similar to those presented here. For example, in *White v. Sunoco, Inc.*, White enrolled in a rewards program with Sunoco, a gas station. 870 F. 3d 257, 260 (3d Cir. 2017). Pursuant to that program, Sunoco offered a 5-cent per gallon discount to customers who purchased its gasoline using a Citibank-issued credit card. *Id*.

Upon enrolling in the program, White received his Citibank card and a corresponding Card Agreement, to which Sunoco was not a signatory, and in which

it was not mentioned. *White*, 870 F.3d at 261. White's contract with Citibank included a provision purporting to identify the disputes that were subject to mandatory arbitration. When White failed to receive his 5-cent per gallon discount, he filed a putative class action against Sunoco for deceptive advertising. Despite being foreign to White's Citibank agreement, Sunoco moved to compel arbitration arguing that the agreement required White "to arbitrate claims against 'connected' entities." *White*, 870 F.3d at 267. The court disagreed, noting first that Sunoco's argument "fails because it confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration." *Id*. More specifically, the court explained that:

> Even if Sunoco is "connected" with Citibank and the claims against Sunoco are covered claims, that does not give Sunoco the right to elect to arbitrate against White. The arbitration clause of the Cardholder Agreement establishes unequivocally that "[e]ither you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute or controversy between you and us (called 'Claims')" . . . The Cardholder Agreement defines "you" as the card holder" and "we" and "us" as Citibank. Nowhere does the agreement provide for a third party, like Sunoco, the ability to elect arbitration or to move to compel arbitration.

*Id*. The court went on to hold that, "The Cardholder Agreement is a contract between White and Citibank, and not Sunoco. Without a contractual basis or equitable principles directing us to enforce the agreement in this disputed between White and Sunoco, a third party, we cannot compel arbitration." *Id*.

In this case, as in *White*, the arbitration provision provides: "**you and MyPillow** agree that any dispute arising out of or in any way related to these messaging terms

16

and conditions ('Messaging Terms') or your receipt of text messages from MyPillow or its service providers will be resolved by binding arbitration." *See* [DE 50] at 3 (emphasis supplied). As such, "[n]owhere does the agreement provide for a third party, like [Lindell and Frank Speech], the ability to elect arbitration or to move to compel arbitration." *White*, 870 F.3d at 267. Accordingly, Lindell and Frank Speech are powerless to invoke the arbitration. *See also Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1058 (10th Cir. 2018) (court reviewing an arbitration agreement that granted "you" or "we" the right to compel arbitration and held that "the intent of the parties is clear from their agreement—only "you" (Cavlovic) or "we" (GE Capital Retail Bank) can demand arbitration of the other. Since there is no indication the parties intended to give J.C. Penney or any other third party the right to demand arbitration, J.C. Penney cannot invoke the arbitration clause of the 2012 credit card agreement.").

Therefore, at best for Defendants, only My Pillow is entitled to compel arbitration against Plaintiffs.

### E.  <u>The Class Action Waiver is Similarly Unenforceable</u>.

This Court should reject Defendants' class action waiver arguments for the same reasons that it should deny arbitration: (1) Defendants have not met their burden to show by a preponderance of the evidence that Plaintiffs agreed to a class waiver; (2) Defendants' "Terms" hyperlink did not place Plaintiffs on notice of any such waiver; and (3) Frank Speech and Lindell are not entitled to enforce any purported agreement. *See Fridman*, 554 F. Supp. 3d at 1260 (denying motion to compel arbitration and enforcement of a class waiver contained in a browsewrap agreement); *Starke v.*

*Squaretrade, Inc.*, 913 F.3d 279, 297 (2d Cir. 2019) (affirming district court's "refusal to assess the scope of the arbitration provision or the validity of the class action waiver" based on a finding "that there was no enforceable agreement to arbitrate[.]"); *Zachman v. Hudson*, No. 20 CV 1579 (VB), 2021 U.S. Dist. LEXIS 53322, at \*19 (S.D.N.Y. Mar. 22, 2021) ("Accordingly, defendant has failed to establish that plaintiff was put on inquiry notice of the mandatory arbitration or class action waiver provisions based on defendant's publication of the revised Account Agreement to the HVCU website.").

## IV.    CONCLUSION

Defendants offer no evidence to support their claim that an agreement exists, and attempt to enforce a browsewrap agreement with no law or facts to support their position. This Court should deny the Motion and allow the case to proceed on the merits.

**WHEREFORE**, Plaintiffs Bethany Gaudreau and Joseph Ram respectfully request an Order denying Defendant's Motion.

Date: June 8, 2022

> Respectfully Submitted,
>
> **HIRALDO P.A.**
>
> */s/ Manuel S. Hiraldo*
> Manuel S. Hiraldo, Esq.
> Florida Bar No. 030380
> 401 E. Las Olas Boulevard
> Suite 1400
> Ft. Lauderdale, Florida 33301
> Email: mhiraldo@hiraldolaw.com

**DAPEER LAW, P.A.**
Rachel N. Dapeer, Esq.
20900 NE 30th Avenue, Ste. 417
Aventura, Florida 333180
Email: rachel@dapeer.com
Telephone: 305-610-5223


**SHAMIS & GENTILE P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Christopher Gold, Esq.
Florida Bar No. 88733
chris@edelsberglaw.com
2875 NE 191st St., Suite 703
Aventura, FL 33180
Tel: 305-975-3320
*Counsel for Plaintiffs*