## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**BETHANY GAUDREAU and JOSEPH RAM,**

         **Plaintiffs,**

**v.**                            **Case No:   6:21-cv-1899-CEM-DAB**

**MY PILLOW, INC., FRANK SPEECH, LLC and MICHAEL JAMES LINDELL,**

         **Defendants.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| |
|---|
| **MOTION:   MOTION TO COMPEL ARBITRATION (Doc. No. 49)** |
| **FILED:      May 26, 2022** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. |

This cause comes before the Court on a Motion to Compel Arbitration and Dismiss Class Action Claims filed by Defendants My Pillow, Inc. ("MyPillow"), Michael James Lindell ("Lindell"), and Frank Speech, LLC ("FrankSpeech")

(collectively, "Defendants"). (Doc. 49). MyPillow seeks this order after answering the initial complaint (Doc. 8), moving to strike the First Amended Complaint (Doc. 22) and then answering it as well (Doc. 32). Plaintiffs Bethany Gaudreau ("Guadreau") and Joseph Ram ("Ram") (collectively, "Plaintiffs") timely filed a Response in Opposition. (Doc. 51). For the reasons stated below, it is respectfully recommended this motion be **DENIED.**

## I.      BACKGROUND

On September 28, 2021, Guadreau filed this putative class action in Florida state court alleging one count of violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, by MyPillow for sending unsolicited text messages. (Doc. 1-1, ¶¶ 29-40). MyPillow removed the case to this Court (Doc. 1) before answering the complaint 52 days later (Doc. 8). Guadreau filed her First Amended Complaint with this Court the next day, alleging not only violations of the TCPA through unsolicited text messages, but also through unsolicited phone calls, as well as violations of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059. (Doc. 9, ¶¶ 56-81). MyPillow then moved to strike the First Amended Complaint (Doc. 22) before answering it (Doc. 32).

On May 5, 2022, Guadreau and Ram jointly filed a Corrected Second Amended Complaint alleging the same claims in the First Amended Complaint against not only MyPillow, but also Lindell and FrankSpeech. (Doc. 44. ¶¶ 93-118).

In part, Plaintiffs allege MyPillow did not receive express written consent authorizing text message or phone call solicitations. *Id.* at ¶ 36. All three Defendants filed the instant Motion to Compel Arbitration in response. (Doc. 49).

On MyPillow's website, there is a link to terms of service, which includes a dedicated space for MyPillow's Messaging Terms and Conditions ("Messaging Terms"), at the bottom of the screen. (Doc. 50, ¶¶ 3-5). The Messaging Terms read, in relevant part:

> You agree to receive recurring automated marketing and informational text (e.g., SMS and MMS) messages from MyPillow, including text messages that may be sent using an automatic telephone dialing system, to the mobile telephone number you provided when signing up or any other number that you designate. . . .
>
> 1. General. In the interest of resolving disputes between you and MyPillow in the most expedient and cost effective manner, you and MyPillow agree that any dispute arising out of or in any way related to these messaging terms and conditions ("Messaging Terms") or your receipt of text messages from MyPillow or its service providers will be resolved by binding arbitration. . . .

*Id.* at ¶ 3. The Messaging Terms further contain a waiver of class actions and right to a trial by jury. *Id.*

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The existence of a valid arbitration agreement is a

threshold issue for determining the propriety of a motion to compel arbitration. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). If the Court finds that no arbitration agreement exists, the Court "cannot compel the parties to settle their dispute in an arbitral forum." *Id.*

When a party moves to compel arbitration, the FAA states that "[t]he court shall hear the parties, *and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue* . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). The determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1152-56 (Fla. 2014).

A motion to compel arbitration is generally treated as a motion to dismiss for subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013). Motions to dismiss based on subject matter jurisdiction come in two forms, facial

attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A facial attack looks to the four corners of the complaint to consider whether subject matter jurisdiction is sufficiently alleged. *Id.* at 1529. The allegations of the Complaint are accepted as true for purposes of the motion to dismiss. *Id.* A factual attack relies on matters outside the pleadings, such as testimony or affidavits. *Id.*

When a factual attack is employed, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court for evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). Generally, motions to compel arbitration are treated as a factual attack because they require reliance on an extrinsic document which deprives the court of its power to adjudicate a plaintiff's claim. *Mason v. Coastal Credit, LLC*, No. 3:18-cv-835, 2018 WL 6620684, at *5 (M.D. Fla. Nov. 16, 2018).

## III.   DISCUSSION

The FAA provides a federal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). But "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* (citation omitted). Under both federal and Florida law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration

clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived. *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004); *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999).

In construing arbitration agreements, courts apply state law principles relating to contract formation, interpretation, and enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "The party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019); *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017). To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Defendants argue the Messaging Terms constitute the operative contract binding Plaintiffs to arbitration. (Doc. 49 at 11). Regardless of that contention, MyPillow's asserted right to arbitrate under the Messaging Terms does not extend to Lindell or FrankSpeech. The arbitration clause itself states that it only reaches disputes between "you and MyPillow." (Doc. 50, ¶ 3). Defendants urge that an agency relationship with MyPillow—which Plaintiffs' allege exists—allows both Lindell and FrankSpeech to avail themselves of the company's purported right to

arbitrate. *See Qubty v. Nagda*, 817 So. 2d 952, 957 (Fla. 5th DCA 2002) ("A number of courts have held that agents must be afforded the benefits of arbitration agreements made by their principal, at least to the extent that the principal's liability and the agent's liability are based on the same set of facts.").

In this case, Defendants rely on inconsistent positions as to the existence of agency. For purposes of invoking a right to arbitrate, they claim there is an agency relationship, but both Lindell and FrankSpeech indicate that they may "ultimately dispute their alleged agency relationship with MyPillow." (Doc. 49 at 15). The onus is on Defendants to prove an agency relationship entitles them to avail themselves of an arbitration agreement. *See, e.g.*, *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) (holding "[third-party beneficiary] must allege and prove" its status as such to invoke a right to arbitrate).

Here, Defendants rely only on *Plaintiffs'* allegations as proof to establish an agency relationship. (Doc. 49 at 15). But Defendants cannot avail themselves of an agency relationship when it benefits them only to dispel the relationship when it does not. *See American Nat'l Bank v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983) ("Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings."). Since Lindell and FrankSpeech indicate that they intend to dispute the agency relationship Plaintiffs' "broadly

allege" exists, or at least reserve their ability to do so, this Court finds they cannot establish such a relationship exists. (Doc. 49 at 15). Without proof of an agency relationship, Lindell and FrankSpeech fail to establish any legal basis for their invoking MyPillow's purported right to arbitrate.

As to MyPillow's right to arbitrate, the company does not meet its burden to show all three necessary factors to establish such a right. First, Defendants fail to show that the Messaging Terms constitute a valid, written agreement between the parties since they provide no proof Plaintiffs visited MyPillow's website or provided their phone numbers to MyPillow. For the same reason, the claims alleged in Plaintiffs' Corrected Second Amended Complaint fall outside the scope of the Messaging Terms and are not arbitrable. Lastly, MyPillow's participation in the litigation thus far waives any right to arbitrate it purportedly had.

### a. Absence of a valid, written agreement between the parties.

Defendants classify the Messaging Terms as a "browsewrap" adhesion contract. (Doc. 49 at 11). "[B]rowsewrap agreements do not require the user explicitly to assent to the terms and conditions of the agreements expressly; a party instead purportedly gives consent simply by using the website." *Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555, at *4 (M.D. Fla. Aug. 26, 2016). Absent actual notice, these agreements "have only been enforced when the hyperlink to the terms and conditions is conspicuous enough to place the user

on inquiry notice." *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 765 (Fla. 4th DCA 2017) (upholding denial to compel arbitration based on "browsewrap" agreement during sale). "Uniformly, courts have declined to enforce 'browsewrap' agreements when the hyperlink to the terms and conditions is buried at the bottom of the page, and the website never directs the user to review them." *Id.*

Defendants do not identify a specific provision in the Messaging Terms that explicitly indicates use of the MyPillow website triggers the clause. Rather, providing a phone number to the site appears to trigger those terms. *See infra* Part III.b. Even if they had, Defendants also provide no evidence that Plaintiffs even accessed—or used—the MyPillow website.[1] "Use" of a website is required for a browsewrap agreement to adhere to a visitor. *Vitacost.com*, 210 So. 3d at 765 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014)). "Use" also requires more than simply accessing the website's homepage. *Cf. Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y.2012) (browsewrap includes terms that user bound "by merely using the services of, obtaining information from, or initiating applications within the website"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (requiring "the consumer takes some action, such as clicking a

---

[1] The hyperlink to MyPillow's terms and conditions is indeed buried at the bottom of the page. (Doc. 50, ¶ 5). But absent proof that Plaintiffs even accessed the website, this Court need not review the website's design.

button or checking a box, that unambiguously manifests his or her assent" to render browsewrap agreement enforceable).

To find an arbitration agreement exists, the Eleventh Circuit requires proof indicating personal knowledge of the conduct manifesting assent of the party upon whom enforcement is sought. *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016). In *Bazemore*, the court found, under Georgia law, the declaration of an employee of the company "woefully inadequate" to establish assent where the employee did not profess personal knowledge that the defendants accepted the terms of the arbitration agreement (or engaged in behavior indicating as much). *Id.* at 1330-32. Florida law dictates a similar conclusion. *See CEFCO*, 278 So. 3d at 354 (finding declaration of an employee only attesting to employer's "ordinary practice" without personal knowledge of defendant's assent inadequate).

Here, Defendants provide no more proof than was available in *Bazemore* or *CEFCO*. Defendants offer an affidavit from Nicolas Dressen ("Dressen"), vice president of digital marketing for MyPillow. (Doc. 50). Dressen only avers that on a date prior to the filing of Plaintiff's complaint, the MyPillow website homepage contained a link with the word "Terms" at the bottom of the screen, which would take a visitor to a page bearing the Messaging Terms. *Id.* at ¶¶ 1-6. None of his declaration relates to the actions or behavior of the Plaintiffs. Without proof of use,

and a contract provision indicating that use binds the user, no agreement for arbitration exists between the parties.[2]

### b. Absence of an arbitrable claim

Even if the Defendants had established a valid, written agreement, the language of that agreement only applies where Plaintiffs provided MyPillow with a phone number. Under Florida law, individual terms must not be considered in isolation when interpreting a contract, but rather must be interpreted as a whole and in relation to one another and so as not to render any term extraneous. *Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1144 (M.D. Fla. 2002). "If the provisions of a contract are unambiguous, courts may not violate the clear meaning of the words in order to create an ambiguity, and certainly may not rewrite the contract." *Florida Recycling Services, Inc. v. Greater Orlando Auto Auction, Inc.*, 898 So. 2d 129, 131 (Fla. 5th DCA 2005).

MyPillow's arbitration provision covers disputes "arising out of or in any way related to these messaging terms and conditions ('Messaging Terms') or your receipt of text messages from MyPillow or its service providers." (Doc. 50, ¶ 3).

---

[2] Having determined that no agreement has been shown, the Court need not reach issues as to the enforceability of such browsewrap terms. Suffice it to note treating such terms—without unambiguous assent from the user—as if two contracting parties actually bargained for, understood, and agreed to them is a one-sided, indulgent legal fiction that bears little resemblance to traditional contract formation principles.

Directly preceding the arbitration provision is the language, "You agree to receive recurring automated marketing and informational text (e.g., SMS and MMS) messages from MyPillow, including text messages that may be sent using an automatic telephone dialing system, to the mobile telephone number *you provided when signing up or any other number that you designate.*" (Doc. 50, ¶ 3) (emphasis added). The plain language indicates a consumer must provide or designate a phone number in order to trigger the Messaging Terms. Additionally, no contrary clause exists indicating assent to these terms derives from anything other than providing or designating a phone number. In light of this, the phrase, "disputes arising out of or in any way related to . . . [the consumer's] receipt of messages from MyPillow or its service providers," refers only to those messages received by "the mobile telephone number [the consumer] provided when signing up or any other number that [the consumer] designate[d]."

Again, Defendants do not provide any proof that Plaintiffs provided or designated phone numbers to MyPillow. Plaintiffs' claims therefore do not arise out of the Messaging Terms but rather "conduct that allegedly violates a separate, distinct federal law." *Gamble v. New England Auto Fin., Inc.*, 735 Fed. Appx. 664, 666 (11th Cir. 2018) (finding loan agreement arbitration clause inapplicable to debtor's TCPA claim); *see also Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—with at least some

directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause."). Plaintiffs deny ever providing written consent. (Doc. 44, ¶ 36). Accordingly, these claims are not arbitrable.

### c.  Waiver

Even if MyPillow had established a written arbitration agreement rendering this action an arbitrable claim, MyPillow waived its purported right to arbitrate. Section 6 of the FAA "is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration," including waiver. *Morgan,* 142 S. Ct. at 1713-14 (holding federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration'"). "The Courts of Appeals . . . have generally resolved cases like this one as a matter of federal law, using the terminology of waiver." *Id.* at 1712 (assuming without deciding they are correct to do so). Waiver may be explicit if a party makes a specific statement of his intent to waive a right, or it may be implied through conduct and such conduct "must make out a clear case." *Air Prod. and Chem., Inc. v. La. Land and Exploration Co.,* 867 F.2d 1376, 1379 (11th Cir. 1989).

*Morgan* abrogated much—perhaps most—of the Eleventh Circuit's precedent on waiver of arbitration agreements. 142 S. Ct. at 1713-14 (abrogating *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). Under

prior precedent, waiver occurred only when (1) "under the totality of the circumstances, the party has acted inconsistently with the arbitration right," and (2) the party's conduct "has in some way prejudiced the other party." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (internal citation omitted). Additionally, the Eleventh Circuit imposed "a heavy burden" on any party arguing waiver of arbitration "because federal law favors arbitration." *Id.* (quoting *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990)). In *Morgan*, the Supreme Court clearly struck down both the prejudice and burden-of-proof requirements, since both are arbitration-specific rules justified by the "policy favoring arbitration." *See Stone*, 898 F.2d at 1543; *S & H Contractors*, 906 F.2d at 1514.

This leaves only the first prong of the waiver test. Historically, this prong is satisfied "when a party seeking arbitration *substantially participates* in litigation to a point inconsistent with an intent to arbitrate." *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (emphasis added). However, the Eleventh Circuit formulated the standard of "substantial participation" by applying the "policy favoring arbitration," the approach the Supreme Court expressly disapproved. *Id.*; *see also S & H Contractors*, 906 F.2d at 1514 ("'[s]ubstantially invok[es] the litigation machinery' prior to demanding arbitration"). Significantly, courts in this circuit do not apply a "substantial participation" standard for other contractual rights that may be waived by

participation in litigation. *E.g. CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 Fed. Appx. 189, 193 (11th Cir. 2021) (finding waiver of appraisal rights where defendants "actively participated," not substantially); *Chmura v. Monaco Coach Corp.*, 8:04-CV-2054-T24MAP, 2005 WL 1705469, at *2 (M.D. Fla. July 19, 2005) (finding waiver of forum selection clause after participation in litigation in improper forum). Under *Morgan*, such a different, heightened standard for considering waiver of arbitration is now impermissible.

In light of *Morgan*, this Court must start anew in developing a rule for waiver of arbitration agreements. Waiver "'is the intentional relinquishment or abandonment of a known right,'" whose analysis "focuses on the actions of the person who held the right." *Morgan,* 142 S. Ct. at 1713 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Under the national "policy favoring arbitration," courts may only "place [arbitration] agreements upon the same footing as other contracts," including with regard to waiver. *Id.* (citing *Granite Rock Co.*, 561 U.S. at 302). Accordingly, this Court shall examine how federal courts in this circuit analyze waiver for other contractual rights, including which law they apply.

With contractual rights, waiver occurs when a party "performs an act which is inconsistent with the right or his intention to rely upon the right." *Weisbart & Co. v. First Nat. Bank of Dalhart, Tex.*, 568 F.2d 391, 396 (5th Cir. 1978) (applying state law). Similarly, under Florida law, "[a] party's contract right may be waived by

actively participating in a lawsuit or taking action inconsistent with that right." *Klosters Rederi A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973).

Courts in this circuit typically apply the state law standard to waiver of different contractual rights, with some deviation. *See Burton-Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405, 408 (5th Cir. 1971) (upholding state law standard as appropriate jury instruction on waiver of arbitration agreement); *Chmura*, 2005 WL 1705469, at *2 (applying state law to waiver of forum-selection clause); *CMR Constr. & Roofing*, 843 Fed. Appx. at 193 (applying state law to waiver of appraisal rights); *Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 19-23765-CIV, 2019 WL 7049878, at *4 (S.D. Fla. Dec. 23, 2019) (same); *Astorquiza v. Covington Specialty Ins. Co.*, 8:19-CV-226-T-60CPT, 2019 WL 12806907, at *3 (M.D. Fla. Nov. 18, 2019), *report and recommendation adopted*, 8:19-CV-226-T-60CPT, 2019 WL 12804215 (M.D. Fla. Dec. 6, 2019) (same); *Woods v. Christensen Shipyards, Ltd.*, 04-61432-CIV-ZLOCH, 2005 WL 5654643, at *3 (S.D. Fla. Sept. 23, 2005) (finding waiver of forum-selection clause under both state and federal standard); *In re Braniff, Inc.*, 118 B.R. 819, 841 (Bankr. M.D. Fla. 1989) (applying state standard to waiver of right to terminate contract); *Bothwell v. Primerica Life Ins. Co.*, 444 F. Supp. 3d 1337, 1340 (N.D. Ala. 2020), *appeal dismissed*, 20-11916-E, 2020 WL 4969616 (11th Cir. Aug. 5, 2020) (applying state standard to waiver of claim insurance policy lapsed); *Snyder v. Time Warner, Inc.*, 179 F. Supp. 2d 1374, 1382 (N.D. Ga. 2001) (applying state

standard to waiver of right to exercise stock options in employment agreement); *Galle v. Nationstar Mortgage, LLC*, 2:16-CV-407-FTM-38CM, 2017 WL 2972072, at *2 (M.D. Fla. July 12, 2017) (combining state and federal law to waiver of right to invoke clause waiving jury trial right); *Roth v. Nationstar Mortg. LLC,* No. 2:15–cv–783–FtM–29MRM, 2016 WL 7473818 (M.D. Fla. Dec. 29, 2016) (same). None of these courts make clear, however, whether they merely applied state law or adopted the state court rule as the federal rule.[3]

At the very least, Eleventh Circuit precedent counsels in favor of consulting state law to govern waiver of arbitration agreements—insofar as it comports with *Morgan*'s edict against arbitration-specific rules. *Burton-Dixie Corp.*, 436 F.2d at 408; *Weisbart & Co.*, 568 F.2d at 396. For more than 15 years, Florida courts have followed the equal-treatment approach made binding by *Morgan. See Raymond James Fin. Services, Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). The Seventh Circuit has followed this approach even longer. *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Under Florida state law, it is well-settled that

---

[3] Regardless of whether the rule is ultimately state or federal, state law provides the applicable standard for contract defenses like waiver if it does not "take[] its meaning precisely from the fact that a contract to arbitrate is at issue." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (Scalia, J.) ("'[S]tate law,' therefore, is applicable to determine which contracts are binding under § 2 [of the FAA] and enforceable under § 3 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'") (quoting *Perry*)).

"filing an answer to a pleading seeking affirmative relief without raising the right to arbitration" constitutes participation sufficient to constitute waiver. *Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 687 (Fla. 2d DCA 2009); *Price v. Fax Recovery Sys., Inc.*, 49 So. 3d 835, 837 (Fla. 4th DCA 2010); *Lapidus v. Arlen Beach Condo. Ass'n*, 394 So.2d 1102, 1103 (Fla. 3d DCA 1981). In *Cabinetree*, the Seventh Circuit held that invoking judicial process by removal is presumptive waiver of the right to arbitrate. 50 F.3d at 390.

In addition to Florida law, for waiver of arbitration, this Court finds analogy to waiver of forum-selection clauses instructive, since waiver occurs through participation in litigation. As Florida courts and the Seventh Circuit do with arbitration agreements, courts in this circuit find removal to, and "active" litigation in, a different forum waives the right to later assert a forum-selection clause. *Chmura*, 2005 WL 1705469, at *2 (finding waiver after nine months of participation in improper forum); *San Miguel Produce, Inc. v. L.G. Herndon Jr. Farms, Inc.*, CV 616-035, 2016 WL 6403964, at *3 (S.D. Ga. Oct. 27, 2016) (finding defendant "acted inconsistently with the forum-selection clause when, on its own accord, it chose to pursue its claims in an improper forum"); *Woods*, 2005 WL 5654643, at *3 (finding no waiver where defendant explicitly reserved rights in Consent Preliminary Injunction).

Under Florida law, and to the same extent as the defendants in *Chmura* and *San Miguel Produce*, MyPillow acted inconsistently with its purported right to arbitrate. Rather than compel arbitration in state court, MyPillow chose to remove the case to this Court. It also answered not one, but two complaints filed by Guadreau against it without mentioning its purported right to arbitrate. Further, MyPillow only sought to vindicate its purported right to arbitrate after actively participating in this litigation for eight months.

But by adding Lindell and FrankSpeech as defendants, MyPillow asserts, Plaintiffs revived the company's purported right to compel arbitration. (Doc. 49 at 19). "[C]ourts will permit the defendant to rescind his earlier waiver, and revive his right to compel arbitration, only if it is shown that the amended complaint unexpectedly changes the scope or theory of the plaintiff's claims." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011). In *Krinsk*, the Eleventh Circuit held that an amended complaint, which expanded the putative class by thousands (possibly tens of thousands), revived the defendant's right to compel arbitration. *Id.* at 1203–04.

But the Supreme Court likely abrogated *Krinsk. See Morgan*, 140 S. Ct. at 1713-14 (holding federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration'"). Invoking "the strong federal policy supporting the enforcement

of arbitration agreements," the *Krinsk* court appears to have created an arbitration-specific variant of a federal procedural rule regarding revival of a waived right. 654 F.3d at 1203. Under Florida law, by contrast, "[w]hen a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it." *Thomas N. Carlton Estate v. Keller*, 52 So. 2d 131, 133 (Fla. 1951); *but see Owens & Minor Med., Inc. v. Innovative Mktg. & Distribution Services, Inc.*, 711 So. 2d 176, 177 (Fla. 4th DCA 1998) (holding only claims "separate and distinct" from those where arbitration is waived revive the right).

Even to the extent *Krinsk* is still good law, MyPillow still waived its purported right to arbitrate. Far from expanding the scope, Plaintiffs' claims in the Corrected Second Amended Complaint arise from the same facts and are nearly identical to those that MyPillow answered. (Doc. 9, ¶¶ 56-81); (Doc. 44, ¶¶ 93-118). Unlike in *Krinsk*, Plaintiffs do not increase the size of the original putative class. Merely adding additional defendants does not expand the scope of the litigation. *See Stankos v. Amateur Athletic Union of the United States, Inc.*, 255 So. 3d 377, 380 (Fla. 4th DCA 2018) ("[N]o Florida case holds that the right to compel arbitration is revived by the filing of an amended complaint."); *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir.1987). Florida courts have found far more substantial changes do not suffice. *See Morrell v. Wayne Frier Mfrd. Home Ctr.*, 834 So.2d 395, 398 (Fla. 5th DCA 2003) (holding amended complaint did not revive right to arbitrate);

*Wilson v. AmeriLife of E. Pasco, LLC*, 270 So. 3d 542, 548 (Fla. 2d DCA 2019) (holding counterclaim did not revive arbitration clause). Thus, MyPillow's purported right to arbitrate remains waived.

### IV.   CONCLUSION

For the foregoing reasons, it is **respectfully recommended** that the motion be denied.

### NOTICE TO PARTIES

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on July 1, 2022.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy