UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:21-cv-01899-CEM-GJK

BETHANY GAUDREAU,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

MY PILLOW, INC.,

        Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to Federal Rule of Civil Procedure 72(b)(2), Plaintiffs Bethany Gaudreau and Joseph Ram respond in opposition to Defendants' Objections to Findings and Conclusions in Report and Recommendation ("Obj." or "Objection"), [DE 65], and state:

**I.    INTRODUCTION**

Defendants filed a Motion to Compel Arbitration which, frankly, bordered on the frivolous. Magistrate Judge David Baker correctly concluded that the Motion lacked merit and that Defendants had waived any purported arbitration rights. In objecting to the Report, Defendants nonsensically complain that it was "premature" to rule on a motion they filed. Obj. at 2-5. Of course, if Defendants believed that they needed additional discovery before moving for arbitration, they should have taken it

1

and/or asked this Court. Instead, they moved for arbitration supported by a vague declaration that established nothing. This Court should deny Defendants' request for a mulligan and, as discussed below, similarly reject Defendants' other challenges to the Report.

## II. LEGAL STANDARD

"Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). A court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "In making its determination, the district court is given discretion and 'is generally free to employ the magistrate judge's findings to the extent that it sees fit.'" *Emess Cap., LLC v. Rothstein*, No. 10-60882-CIV-LENARD/GOODMAN, 2011 U.S. Dist. LEXIS 162983, at *6-7 (S.D. Fla. Dec. 21, 2011) (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007)).

## III. ARGUMENT

### A. **Defendants Failed to Meet and Cannot Shift Their Burden to Plaintiffs**.

Defendants complain that it was premature for the Magistrate Judge to conclude that they failed to meet their evidentiary burden. Obj. at 2-5. Defendants further contend that by filing a deficient arbitration motion, the burden shifted to Plaintiffs to rebut Defendants' unsupported motion. Stated differently, Defendants

claim that the Magistrate Judge should have granted the Motion to Compel because Plaintiffs did not present "admissible evidence" rebutting Defendants' contention that an agreement was formed. Obj. at 4. Defendants' argument is flawed because it presupposes that Defendants submitted evidence to rebut in the first place, which they did not.

Instead, Defendants filed a motion supported by vague declaration that said nothing and, as the Magistrate Judge properly concluded, the evidentiary burden never shifted to Plaintiffs. *See CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019) ("[t]he party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists."); *Bazemore v. Jefferson Cap. Sys.*, LLC, 827 F.3d 1325, 1330 (11th Cir. 2016) ("The party asserting the existence of a contract has the burden of proving its existence and its terms."); *Gerrish v. Coast Pump & Supply Co.*, No. 8:21-cv-365-JSS, 2021 U.S. Dist. LEXIS 202979, at *4 (M.D. Fla. Oct. 21, 2021) ("If the moving party shows the existence of a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to 'show that no valid contract existed.'") (quoting *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325 (S.D. Fla. 2016)); *Treto v. Princess Cruise Lines*, No. 1:17-cv-20790-KMM, 2017 U.S. Dist. LEXIS 228464 (S.D. Fla. Aug. 10, 2017) ("Because Defendant made a 'prima facie showing of the existence of an agreement to arbitrate' (the 2012 Contract), the burden 'shifts to the party opposing arbitration.'") (quoting *Desimoni v. TBC Corp.*, No. 2:15-CV-366-FTM-99CM, 2016 U.S. Dist. LEXIS 88085, 2016 WL 3675460, at *5 (M.D. Fla. June 9, 2016), *report and recommendation adopted*, No. 2:15-CV-366-

FTM-99CM, 2016 U.S. Dist. LEXIS 88082, 2016 WL 3633540 (M.D. Fla. July 7, 2016)).

In other words, "the Court need not proceed to the second step of the analysis because it [should be] thoroughly unconvinced that Defendants have even demonstrated the existence of an agreement in order to shift the burden to Plaintiffs." *Barkley v. Pizza Hut of Am., Inc.*, No. 6:14-cv-376-Orl-37DAB, 2014 U.S. Dist. LEXIS 110640, at *10-11 (M.D. Fla. Aug. 8, 2014) (Dalton, J.) ("In short, Defendants have not made out a *prima facie* case that Plaintiffs Barkley, Phillips, and Walsh agreed to arbitrate, and the burden does not shift to Plaintiffs to substantiate their denial under *Chastain*.") (citing *Newman v. Hooters of Am., Inc.*, No. 8:06-CIV-364-EAK-TGW, 2006 U.S. Dist. LEXIS 44088 (M.D. Fla. June 28, 2006) (rejecting an identical argument based on company policy and noting that "[t]his Court will not rely on 'if, then' scenarios and reverse factual inferences to establish the existence of a contract"); *Turner v. U-Haul Co. of Fla. 905*, No. 6:09-cv-118-Orl-28DAB, 2008 U.S. Dist. LEXIS 20081, 2008 WL 709107, at *2 (M.D. Fla. Mar. 14, 2008) (Baker, M.J.) ("[T]here is no evidence of the one thing that is absolutely crucial to a motion to compel arbitration under either state or federal law: *a written agreement to arbitrate.*").

Accordingly, the cases on which Defendants rely are of little help to their position because there – unlike here – the defendants satisfied their initial burden to show existence of an agreement. *See, e.g.*, *Gustave v. SBE ENT Holdings, LLC,* Civil Action No. 19-23961-Civ-Scola, 2020 U.S. Dist. LEXIS 180264, at *4 (S.D. Fla. Sep. 30, 2020) ("The fact that the Plaintiffs signed those documents is not in dispute.");

4

*Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (defendant established the existence of agreement, but plaintiffs disputed that the agreement was enforceable because it was not signed by all parties); *TracFone Wireless, Inc. v. Blue Ocean's Distrib., LLC*, 616 F. Supp. 2d 1284 (S.D. Fla. 2009) (defendant established the existence of an agreement, and the plaintiff argued simply that the court should stay the proceedings pending arbitration).

Defendants also complain that no evidentiary hearing was conducted, Obj. at 3, but the reason no hearing was conducted is because they never asked for one. In sum, as Defendants correctly note, they have "the ultimate burden to establish a valid arbitration agreement[,]" Obj. at 5, and they chose to move to compel arbitration knowing that they could not satisfy that burden. Now, Defendants seek a do-over, suggesting that Plaintiffs should prove their motion for them. This Court should, respectfully, adopt the Report.

B. **Defendants Misconstrue the Magistrate Judge's Discussion Regarding Judicial Estoppel.**

As the Magistrate Judge correctly noted, "***[t]he onus is on Defendants*** to prove an agency relationship entitles them to avail themselves of an arbitration agreement." Rpt. at 7 (emphasis added) (citing *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) (holding "[third-party beneficiary] must allege and prove" its status as such to invoke a right to arbitrate)). Finding no evidence of an agency relationship between MyPillow on the one hand, and Lindell and FrankSpeech on the other, the Magistrate Judge concluded that, "[w]ithout proof of an agency

5

relationship, Lindell and FrankSpeech fail to establish any legal basis for their invoking MyPillow's purported right to arbitrate." *Id.* at 8.

Defendants "object to the Report's finding that judicial estoppel applies in this case." Obj. at 5. But the Report made no such finding. While it is true that the Report cited the rule on judicial estoppel, explaining that the "doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings[,]" Rpt. at 7, the Report did so only to demonstrate that there is an interest in preventing Defendants from making a mockery of the justice system.

Indeed, Defendants' obvious intent (which the Report recognizes) is to take the position here that there is an agency relationship between them in order to invoke MyPillow's arbitration agreement, only to then argue in arbitration that there is no agency relationship such that Lindell and FrankSpeech should be dismissed. *See* Mot. at 15-16 ("Though Lindell and FrankSpeech may ultimately dispute their alleged agency relationship with MyPillow, this dispute will be for the arbitrator to decide."). In attempting to pull off this trick, Defendants intentionally did not argue in their Motion that an agency relationship exists and, in doing so, failed to carry their burden to prove an agency relationship. Instead, Defendants attempted to meet their burden by merely relying on Plaintiffs allegations that "the three Defendants have worked in concert to prepare and send text messages." *Id.* at 15. Thus, it is clear that Defendants were attempting to make a mockery of the judicial system, which should never be permitted (irrespective of whether the game is analyzed under the lens of "judicial estoppel").

Defendants' attempt to make a mockery of the judicial system (or even application of "judicial estoppel"), however, is not the reason the Magistrate Judge found that Lindell and FrankSpeech failed to establish any legal basis for invoking MyPillow's purported right to arbitrate. The reason, as laid out in the Report, is that Defendants *failed to carry their burden* to prove an agency relationship entitles them to avail themselves of an arbitration agreement.

Thus, this Court should overrule Defendants' objection to the Report's purported "finding" that judicial estoppel applies (which the Report never found).

### C. The Magistrate Judge Correctly Concluded that MyPillow Waived its Arbitration Rights.

The Magistrate Judge correctly concluded that MyPillow acted inconsistently with its purported right to arbitrate by actively participating in litigation for eight months, including: (1) removing the case from state court; (2) answering two separate complaints against it; and (3) engaging in discovery. Defendants contend, in conclusory fashion, that the Corrected Second Amended Complaint revived MyPillow's right to arbitrate because it "materially expanded the theory and scope of Plaintiffs' case, introducing new allegations of a 'marketing scheme' hatched among entirely new defendants." Obj. at 7-8. The Magistrate Judge considered this argument, analyzed the allegations of the Amended Complaint and the Second Amended Complaint, and correctly concluded the opposite:

> Far from expanding the scope, Plaintiffs' claims in the Corrected Second Amended Complaint arise from the same facts and are nearly identical to those that MyPillow answered. (Doc. 9, ¶¶ 56-81); (Doc. 44, ¶¶ 93-118). Unlike

7

in *Krinsk*, Plaintiffs do not increase the size of the original putative class. Merely adding additional defendants does not expand the scope of the litigation. *See Stankos v. Amateur Athletic Union of the United States, Inc.*, 255 So. 3d 377, 380 (Fla. 4th DCA 2018) ("[N]o Florida case holds that the right to compel arbitration is revived by the filing of an amended complaint."); *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir.1987). Florida courts have found far more substantial changes do not suffice. *See Morrell v. Wayne Frier Mfrd. Home Ctr.*, 834 So.2d 395, 398 (Fla. 5th DCA 2003) (holding amended complaint did not revive right to arbitrate); *Wilson v. AmeriLife of E. Pasco, LLC*, 270 So. 3d 542, 548 (Fla. 2d DCA 2019) (holding counterclaim did not revive arbitration clause). Thus, MyPillow's purported right to arbitrate remains waived.

While the Report suggests that *Morgan* abrogated much of the Eleventh Circuit's precedent on waiver of arbitration agreements, the question of revival was analyzed in the Report under both state and federal court standards. Rpt. at 13, 20 ("Even to the extent *Krinsk* is still good law, MyPillow still waived its purported right to arbitrate."). Therefore, Defendants' contention that the Court incorrectly applied a Florida state law standard in its analysis is unavailing. Under either the state or federal standard, the Report correctly concluded that MyPillow's purported right to arbitrate remains waived.

### D. The Magistrate Judge Correctly Held that the Purported Class Waiver is Inapplicable.

As the Magistrate Judge correctly noted:

> Having determined that no agreement has been shown, the Court need not reach issues as to the enforceability of such browsewrap terms. Suffice it to note treating such terms—without unambiguous assent from the user—as if two contracting parties actually bargained for, understood, and

8

> agreed to them is a one-sided, indulgent legal fiction that bears little resemblance to traditional contract formation principles.

Rpt. at 11.

In construing online agreements, courts apply state law principles relating to contract formation, interpretation, and enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "The party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019); *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017). To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Defendants argue that the Messaging Terms constitute an operative contract barring Plaintiffs from bringing forth any claims on a class-wide basis. Defendants classify the Messaging Terms as a "browsewrap" adhesion contract. "[B]rowsewrap agreements do not require the user explicitly to assent to the terms and conditions of the agreements expressly; a party instead purportedly gives consent simply by using the website." *Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555, at *4 (M.D. Fla. Aug. 26, 2016). Absent actual notice, these agreements "have only been enforced when the hyperlink to the terms and conditions is conspicuous enough to place the user on inquiry notice." *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 765 (Fla. 4th DCA 2017) (upholding denial to compel arbitration based

9

on "browsewrap" agreement during sale). "Uniformly, courts have declined to enforce 'browsewrap' agreements when the hyperlink to the terms and conditions is buried at the bottom of the page, and the website never directs the user to review them." *Id.*

Defendants, however, do not identify a specific provision in the Messaging Terms that explicitly indicates use of the MyPillow website triggers its class-waiver clause. Even if they had, as discussed above, Defendants have yet to produce evidence that Plaintiffs even accessed—or used—the MyPillow website. The Report also correctly notes that "[t]he hyperlink to MyPillow's terms and conditions is indeed buried at the bottom of the page." Rpt. at 9.

To find a browsewrap agreement exists, the Eleventh Circuit requires proof indicating personal knowledge of the conduct manifesting assent of the party upon whom enforcement is sought. *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016). Here, Defendants offered no such proof. Defendants offered an affidavit from Nicolas Dressen, vice president of digital marketing for MyPillow. [D.E. 50]. Dressen only avers that on a date prior to the filing of Plaintiff's complaint, the MyPillow website homepage contained a link with the word "Terms" at the bottom of the screen, which would take a visitor to a page bearing the Messaging Terms. *Id.* at ¶¶ 1-6. The report correctly notes that none of Dressen's declaration relates to the actions or behaviors of the Plaintiffs. Rpt. at 10. Without proof of use, and a contract provision indicating that the use binds the user, no agreement to waive class claims exists between the parties. Thus, for the same reasons that no agreement to arbitrate exists, this Court should find that Plaintiffs did not agree to waive their right to bring

claims on a class-wide basis.

Even if this Court finds that Plaintiffs did agree to a waiver of class action—which they did not—that agreement would not extend to Defendants Lindell or Frank Speech. The purported terms state that they only reach disputes between "you and MyPillow". [D.E. 50] at ¶ 3. Defendants argue that an agency relationship with MyPillow allows both Lindell and Frank Speech to avail themselves to MyPillow's purported class action waiver. Defendants, however, rely on inconsistent positions as to the existence of this agency as the Magistrate Judge correctly noted and discussed above.

For purposes of invoking a right to arbitrate and a waiver of class claims, Defendants claim there is an agency relationship, but both Lindell and Frank Speech indicate that they may ultimately dispute their alleged relationship with MyPillow. Defendants cannot have it both ways. "Defendants cannot avail themselves of an agency relationship when it benefits them only to dispel the relationship when it does not." Rpt. at 7. The Report goes on to note that "[w]ithout proof of an agency relationship, Lindell and FrankSpeech fail to establish any legal basis for their invoking MyPillow's purported right to arbitrate." Rpt. at 8. This same logic also applies to Lindell's and Frank Speech's contention that Plaintiff waived their rights to bring claims on a class-wide basis.

## IV. CONCLUSION

Defendants have wasted enough judicial and party resources advancing a motion to compel arbitration that has no merit. This Court should overrule Defendants' objection and adopt the Report in full so this case can get back on track.

**WHEREFORE**, Plaintiffs Bethany Gaudreau and Joseph Ram respectfully request an Order adopting the Report, and for such other relief deemed appropriate.

Date: July 29, 2022

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com

**DAPEER LAW, P.A.**
Rachel N. Dapeer, Esq.
20900 NE 30th Avenue, Ste. 417
Aventura, Florida 333180
Email: rachel@dapeer.com
Telephone: 305-610-5223

**SHAMIS & GENTILE P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.

Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Christopher Gold, Esq.
Florida Bar No. 88733
chris@edelsberglaw.com
2875 NE 191st St., Suite 703
Aventura, FL 33180
Tel: 305-975-3320
*Counsel for Plaintiffs*
